```
                                        SDC SDNY
                                        DOCUMENT
                                        ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT            DOC #: _____
SOUTHERN DISTRICT OF NEW YORK           DATE FILED:  11/30/09
```

------------------------------------------------------------X

IESHA V. BOWENS,                                    :

                    Plaintiff,              :

               -v.-                            :

COMMISSIONER OF SOCIAL SECURITY,                    :

                Defendant.               :

09 Civ. 1720 (GWG)

OPINION AND ORDER

------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Iesha V. Bowens, proceeding pro se, brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") benefits. The parties have consented to this matter being determined by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons stated below, the Commissioner's motion is granted.

I.     BACKGROUND

     A.    Administrative History

      Bowens applied for SSI benefits on August 6, 2007, alleging that she has suffered from severe back pain since December 2006 and as a result is unable to work.[1] See Administrative Record ("R") (annexed to Answer), at 61, 76. Prior to applying for disability, Bowens was

---

    [1] While Bowens states her disability consists of "back pain, anxiety, [and] depression," see Complaint, filed Feb. 24, 2009 (Docket # 2) ("Compl.") ¶ 4, she did not raise anxiety or depression as bases for her claim before the Social Security Administration ("SSA"), see Administrative Record (annexed to Answer, filed May 29, 2009 (Docket # 4)), at 61-74. Accordingly, we cannot conclude that the agency erred in its failure to consider these conditions and thus we consider solely Bowens's claim that she is eligible for SSI benefits because her back pain renders her unable to work.

employed as a babysitter and hairdresser from January 1995 until May 1998, as a telemarketer

from August 1998 until August 1999, and as a cashier from September 1999 until January 2005.

R. 107.  In 2005, she left her job as a cashier to care for her husband and daughter, both of whom

were ill at the time.  R. 29.  As part of her application for SSI benefits, Bowens submitted

records from several emergency room and doctors visits from December 22, 2006 through June

20, 2007.  See R. 134-57.  She also underwent a medical evaluation by a consultative physician

hired by the agency.  See R. 129-33.

On October 11, 2007, her application was denied.  R. 36.  Bowens then requested a

hearing before an Administrative Law Judge ("ALJ"), R. 41-42, which was held on July 17,

2008.  R. 17-34.

> 1.    Bowens's Medical Records and Reports

Bowens submitted several sets of medical records with her application for SSI benefits.

R. 134-57.  Her application also included a physical assessment by an agency examiner, R. 123-

28, and a medical examination by the consultative physician.  R. 129-33.  These records are

summarized below.

On December 22, 2006, Bowens was diagnosed with lower back pain during a visit to

Beth Israel Medical Center's emergency room.  R. 142.  Medical staff noted her appearance to be

"healthy and comfortable," though recording that she suffered from pain registering as a five,

and then as an eight on a scale of one to ten, and a physical exam revealed muscle tenderness.  R.

140, 143.  During the physical exam she registered a five out of five on a strength test.  R. 140.

She was discharged after two hours and prescribed pain medications for the back pain.  R. 142.

On December 28, 2006, Bowens was seen by Dr. Michael Guo who recorded her

condition as unspecified back pain.  R. 152-53.  A physical exam revealed that she retained

normal muscle tone, and did not exhibit muscle atrophy.  R. 152.

On January 2, 2007, Bowens returned to Dr. Guo complaining of back pain and stated

that the pain became worse when she bent her back.  See R. 151.  His physical exam revealed a

"lumbar spinal region muscular spasm, [and] mild local tenderness."  See R. 151.  He referred

her to an "orthropedic [sic]."  R. 151.  There is no indication in her medical records or testimony

that she ever followed up on this referral.

On January 3, 2007, Bowens was treated by the North General mobile clinic for lower

back pain and was referred to "pain services."  R. 135.  Bowens's medical records show that she

made a third emergency room visit – this time to Bellevue Hospital Center on February 7, 2007.

R. 155.  During the visit, she was again treated for back pain and prescribed Vicodin, Flexeril,

and Motrin.  See R. 155-56.

Between February 2007 and June 2007, Bowens was examined by Dr. Guo, or his

colleague Dr. Min Song, on five occasions, see R. 144, 145-46, 147, 148, 149, during which she

consistently reported that her back pain was worsening, but denied any numbness or weakness.

See R. 145, 147, 148-49.  Both doctors referred her to a neurologist and prescribed her pain

relievers, primarily Flexeril and Vicodin.  See R. 144-50.  Records of each physical examination

again revealed a "lumbar spinal region muscular spasm, [and] mild local tenderness."  R. 144-49.

On April 6, 2007, Dr. Song's notations recorded a MRI which showed a "nonstenotic disc bulge

at L4L5."  R. 147.  During a visit on May 7, 2007, she asked Dr. Guo to provide a letter stating

that she was unable to work "because she had difficulty walking."  R. 145.  Dr. Guo advised her

to consult an occupational physician instead.  R. 146.  He further advised against lifting weight,

3

and that she should undertake "self exercise" and should "continue daily activities as tolerated."

R. 145.  At the last visit on record, on June 20, 2007, Dr. Guo referred her to a pain clinic and

recommended that she attend a scheduled appointment with the neurologist.  R. 144.

After filing her application for SSI benefits in August 2007, Bowens underwent a

physical examination by a consultative physician, Dr. Aurelio Salon.  See 130-33.  Dr. Salon

found that Bowens "appeared to be in no acute distress" and was able to walk properly with a

normal gait, "walk on heels and toes without difficulty[, and] squat full[y]."  R. 130.  She was

"[a]ble to rise from the chair without difficulty" and "[n]eeded no help changing for [the] exam

or getting on and off the exam table."  R. 130.  Dr. Salon concluded that although Bowens

reported using a cane to assist her movement, "the cane [which was given to her by a friend] is

not medically necessary."  R. 130.  The findings of the physical exam were as follows:

> Cervical [and lumbar] spine shows full flexion, extension, lateral flexion
> bilaterally, and full rotary movement bilateral.  No scoliosis, kyphosis, or
> abnormality in the thoracic spine . . . SLR negative bilaterally.  Full ROM of
> shoulders, elbows, forearms, and wrists bilaterally.  Full ROM of hips, knees, and
> ankles, bilaterally.  Strength 5/5 in upper and lower extremities.  No evidence of
> subluxations, contractures, ankylosis, or thickening.  Joints stable and nontender.
> No redness, heat, swelling, or effusion.

R. 130-31.  An x-ray done as part of the consultation showed "straightening" of the spine.

R. 131, 133.

Dr. Salon concluded that "[o]n the basis of the history and physical just performed, there

are no objective findings to support the fact that the claimant would be restricted in her ability to

sit or stand, or in her capacity to climb, push, pull, or carry heavy objects."  R. 131.

On October 10, 2007, Bowens was assessed by an agency examiner.  R. 123-28.  The

examiner found that the medical records "fail to support the severity of her allegations" and

4

concluded that she retained the ability to occasionally lift or carry 50 pounds, to frequently lift or carry 25 pounds, to sit for about six hours during an eight hour work day with normal breaks, and to push or pull "including . . . operation of hand and/or foot controls." R. 124, 127.

>        2.        Hearing before ALJ

At a hearing before an ALJ held on July 17, 2008, Bowens, who was 37 years old at the time, R. 26, testified that she began to experience pain in her lower back in 2006, which she asserted was diagnosed as a "non-stenonetic [sic] . . . disk bulge between [her] fourth and fifth lumbar on [her] lower spine." R. 24.  She could not testify to any particular injury that caused the back pain.  See R. 23.  Bowens stated that just prior to her ailment, she had worked as a cashier and that this work required her to stand between six to eight hours a day. R. 29-28.  She stated that the pain made it difficult for her to stand or sit at a desk longer than two to three hours or lift items, though she could occasionally bend and squat. R. 25.  When in pain, she was confined to her home and had to rely on her mother or husband for everyday housework and shopping.  See R. 26, 29.  Bowens acknowledged that occasionally she was well enough to go grocery shopping, but that she remained unable to push a shopping cart or lift heavy items like "bleach[,] . . . detergent, soda and milk." R. 26.  She testified that she could walk slowly and used a cane "when [her pain] was really bad and . . . [she had] to go out." R. 30.  She acknowledged that the cane was not prescribed by a doctor.  Id.  When asked how she traveled to the hearing that day, Bowens stated that she walked from her home.  Id.  At the hearing, Bowens took pain medication stating that her back had begun to hurt.  Id.  When her back was not troubling her, Bowens could perform light housework and use a computer. R. 33.  She often took "ibuprofen, the generic version of Vicodin, and the cyclobenzaprine, a muscle relaxant." R.

28. She also used a heating pad or hot water bottle for pain relief. Id. Bowens testified that as a result of her back pain she was unable to return to work, which she originally left in January 2005 to care for her daughter and husband. R. 29.

### 3.    ALJ Findings and Appeal Council's Denial of Review

On September 3, 2008, the ALJ issued a decision denying Bowens's application for disability benefits. R. 8-16. The ALJ determined that Bowens had "not engaged in substantial gainful activity" since applying for SSI benefits, but did not suffer from "an impairment or combination of impairments" to qualify for disability benefits. R. 13. The ALJ found her claims regarding "her abilities and limitations . . . only partially credible" and that the record supported that she retained "residual functional capacity to perform a full range of light work." R. 13-14. Specifically, the ALJ's findings are as follows:

> 1. The claimant has not engaged in substantial gainful activity since August 2, 2006 . . . .
>
> 2. The claimant has been found to have severe musculoskeletal impairments that caused significant limitations in her ability to perform basic work activities. Accordingly, the Administrative Law Judge is continuing on with the five step process (20 C.F.R. 404.1520(c)).
>
> . . .
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . . In this particular case, the pertinent sections found within Listing 1.00 [of 20 C.F.R. Part 404, Subpart P, Appendix 1] required specific findings which are not present.[2]
>
> 4. [T]he claimant has the residual functional capacity to perform the full range of

---

[2]  SSA regulations state that "a musculoskeletal impairment . . . is defined as the inability to ambulate effectively on a sustained basis . . . or the inability to perform fine and gross movements effectively on a sustained basis." 20 C.F.R. 404, Subpt. P, App. 1, Pt. A, § 1.00(B)(2)(a).

light work as defined in 20 C.F.R. 416.967(b).

. . .

5. The claimant is capable of performing past relevant work as a cashier and a telemarketer. . . . The work involved in both of these occupations does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 416.967).

6. The claimant has not been under a disability, as defined in the Social Security Act, since August 2, 2007 (20 C.F.R. 416.920(f)), the date the application was filed.

R. 13-16.

In the decision, the ALJ relied both on objective medical findings and Bowens's own testimony in holding that "statements regarding her abilities and limitations [were] only partially credible." R. 14. He recognized that Bowens's own medical reports documented consistent complaints of lower back pain and an unchanging diagnosis of a non-stenotic disc bulge "at the L4-L5 level." R. 15. However, emergency reports from 2006 showed "no traumatic incident report . . . or [indication of] previous back injuries . . . [and that] her pain was not radiating in nature," and showed "normal strength, bilateral deep tendon reflexes, and intact sensations." Id. The ALJ also cited reports by Bowens's treating physicians who, in acknowledging that she suffered from "unspecified back pain," nevertheless found "no gait disturbance." Id. The decision also noted that Dr. Guo did not indicate that Bowens was unable to work because of her ailment, but instead referred Bowens to an occupational physician – a step Bowens failed to undertake. Id. Additionally, he noted that the emergency room physician "did not provide an assessment with specific restrictions" and "advised activities as tolerated." R. 15.

The ALJ found the treating physicians' reports consistent with that of the consultative physician, Dr. Salon, who concluded that the cane was "not medically necessary" and that she

"appeared in no acute distress, and presented with normal gai[t], full squat, normal stance, and an ability to perform heel and toe walking without difficulty." R. 14-15. The lumbar x-ray conducted as part of the consultative examination found "only straightening of the lumbar spine." R. 14. The ALJ also noted that Bowens had not left her last job because of any physical difficulties but rather because she needed to take care of ill family members. Id.

The ALJ also discussed Bowens's appearance and testimony at her hearing. He noted that she arrived alone without assistance and testified to still "being able to do some cooking, cleaning, laundry . . . [as well as] computer work, and shop[ping]." R. 14. This was consistent with Bowens's Adult Function Report, in which she disclosed that she was still able to continue some daily activities including "making beds, performing household chores . . . making simple meals," and caring for the household cat. Id.

In conclusion, the ALJ found that Bowens was "capable of performing past relevant work as a cashier and a telemarketer . . . ." R. 16.

On October 28, 2008, Bowens sought review of the ALJ's opinion by the Appeals Council, which denied her request for review on December 18, 2008. R. 1-4.

B.    The Instant Action

On February 24, 2009, Bowens filed her complaint in this court asserting that the ALJ's decision was "not supported by substantial evidence on the record." Compl. ¶¶ 4, 9. On May 29, 2009 the defendant filed the administrative record and moved for a judgment on the pleadings on July 13, 2009. See Answer; Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, filed July 13, 2009 (Docket # 10) ("Def. Memo"), at 1. Bowens has not submitted a response to the defendant's motion.

8

"appeared in no acute distress, and presented with normal gai[t], full squat, normal stance, and an ability to perform heel and toe walking without difficulty." R. 14-15. The lumbar x-ray conducted as part of the consultative examination found "only straightening of the lumbar spine." R. 14. The ALJ also noted that Bowens had not left her last job because of any physical difficulties but rather because she needed to take care of ill family members. Id.

    The ALJ also discussed Bowens's appearance and testimony at her hearing. He noted that she arrived alone without assistance and testified to still "being able to do some cooking, cleaning, laundry . . . [as well as] computer work, and shop[ping]." R. 14. This was consistent with Bowens's Adult Function Report, in which she disclosed that she was still able to continue some daily activities including "making beds, performing household chores . . . making simple meals, and caring for the household cat." Id.

    In conclusion, the ALJ found that Bowens was "capable of performing past relevant work as a cashier and a telemarketer . . . ." R. 16.

    On October 28, 2008, Bowens sought review of the ALJ's opinion by the Appeals Council, which denied her request for review on December 18, 2008. R. 1-4.

    B.    The Instant Action

    On February 24, 2009, Bowens filed her complaint in this court asserting that the ALJ's decision was "not supported by substantial evidence on the record." Compl. ¶¶ 4, 9. On May 29, 2009 the defendant filed the administrative record and moved for a judgment on the pleadings on July 13, 2009. See Answer; Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, filed July 13, 2009 (Docket # 10) ("Def. Memo"), at 1. Bowens has not submitted a response to the defendant's motion.

8

II.    DISCUSSION

A.    Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner must determine whether the Commissioner has applied the correct legal standard and whether the decision is supported by substantial evidence. See, e.g., Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.) (citing Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004)), cert. denied, 551 U.S. 1132 (2007); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Burgess, 537 F.3d at 127-28; Matthews v. Leavitt, 452 F. 3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.")). "The role of the reviewing court is therefore 'quite limited and substantial deference is to be afforded the Commissioner's decision.'" Hernandez v. Barnhart, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quoting Burris v. Chater, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996)). The

9

reviewing court may not substitute its judgment for that of the Commissioner; further, it may

reverse the administrative determination "only when it does not rest on adequate findings

sustained by evidence having 'rational probative force.'"  Williams ex rel. Williams v. Bowen,

859 F.2d 255, 258 (2d Cir. 1988) (quoting Consol. Edison Co., 305 U.S. at 230).

     Notwithstanding this deferential standard, it is well settled that the ALJ has an

affirmative duty to develop the record in a disability benefits case and that remand is appropriate

where this duty is not discharged.  See, e.g., Shaw, 221 F.3d at 131; Rosa v. Callahan, 168 F.3d

72, 79, 82-83 (2d Cir. 1999).  The non-adversarial nature of a Social Security hearing requires

the ALJ "to investigate the facts and develop the arguments both for and against granting

benefits." Sims v. Apfel, 530 U.S. 103, 111 (2000) (citing Richardson, 402 U.S. at 400-01).  The

ALJ's duty to develop the administrative record encompasses not only the duty to obtain a

claimant's medical records and reports but also the duty to question the claimant adequately

about any subjective complaints and the impact of the claimant's impairments on the claimant's

functional capacity.  See, e.g., Cruz v. Sullivan, 912 F.2d 8, 11-12 (2d Cir. 1990); Echevarria v.

Sec'y of Health & Human Servs., 685 F.2d 751, 755-56 (2d Cir. 1982).

     B.     Standard Governing Evaluations of Disability Claims by the Agency

     The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person

will be found to be disabled only if it is determined that his "impairments are of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."   42 C.F.R. § 423(d)(2)(A).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."   Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. § 404.1520(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." § 404.1520(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities. . . ."  § 404.1520(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpt. P, App. 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience.  § 404.1520(a)(4)(iii).  Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's residual functional capacity to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  § 404.1520(a)(4)(iv).  If the claimant is able to do such work, he or she is not

11

disabled. Id. Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity permits the claimant to do other work. § 404.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. The claimant bears the burden of proof on all steps except the final one – that is, proving that there is other work the claimant can perform. See Paupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curium).

The ALJ denied Bowens's claim finding that she failed to meet the requirements of the third and fourth steps outlined above. R. 13-14. In particular, the ALJ partially discounted Bowens's "statements regarding her abilities and limitations" in ultimately concluding that the record does not support a finding of disability. R. 14. The Second Circuit has held that where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Bowen, 859 F.2d at 260-61 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)); accord Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). The ALJ must make this determination "in light of medical findings and other evidence[] regarding the true extent of the pain alleged." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (quoting McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980)).

The Social Security Administration ("SSA") has issued a regulation relating to reports of pain or other symptoms by a claimant for SSI benefits. See 20 C.F.R. § 416.929(c). This regulation provides, inter alia, that the SSA "will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work . . . solely because the available objective medical evidence does

12

not substantiate [her] statements." § 416.929(c)(2).  The regulations also provide that the SSA

"will consider whether there are any inconsistencies in the evidence and the extent to which

there are any conflicts between [her] statements and the rest of the evidence."  § 416.929(c)(4).

Moreover, the SSA has issued its own ruling on assessing the credibility of individual

statements in agency adjudications.  See SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2,

1996).  The ruling states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a
> greater level of severity of impairment than can be shown by the objective
> medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds
> of evidence, including the factors below, that the adjudicator must consider in
> addition to the objective medical evidence when assessing the credibility of an
> individual's statements:
>
> > 1. The individual's daily activities;
> >
> > 2. The location, duration, frequency, and intensity of the individual's pain
> > or other symptoms;
> >
> > 3. Factors that precipitate and aggravate the symptoms;
> >
> > 4. The type, dosage, effectiveness, and side effects of any medication the
> > individual takes or has taken to alleviate pain or other symptoms;
> >
> > 5. Treatment, other than medication, the individual receives or has
> > received for relief of pain or other symptoms;
> >
> > 6. Any measures other than treatment the individual uses or has used to
> > relieve pain or other symptoms (e.g., lying flat on his or her back, standing
> > for 15 to 20 minutes every hour, or sleeping on a board); and
> >
> > 7. Any other factors concerning the individual's functional limitations and
> > restrictions due to pain or other symptoms.

Id.  "Additionally, the ALJ should examine the claimant's internal consistency and may

consider personal observations as long as they are part of a larger overall evaluation."  Peña v.

Astrue, 2008 WL 5111317, at *11 (S.D.N.Y. Dec. 3, 2008) (citing SSR 96-7p, 1996 WL 374186,

at *5, 8).

The ALJ in this case justifiably relied on consistent medical reports from treating and consultative physicians to find that the reports did not support Bowens's claims of disability. R. 14-15.  The ALJ also considered the fact that Bowens consistently reported back pain and was prescribed pain medication as a result.  R. 15.  However, the ALJ found that her assertions as to the extent of her limitations were contravened by a number of circumstances including the fact that Dr. Salon opined that the cane was not medically necessary, that all physicians noted a normal gait, that Bowens's reports of pain were not radiating in nature, that she had not left her prior work because of back pain, and that the treating physicians advised that Bowens could perform activities as tolerated and did not note any specific restrictions.  R. 14-15.  Moreover, the ALJ noted that there was no evidence that Bowens followed her doctors' counsel to consult an occupational physician or physical therapist, and she had not consistently followed up with visits to the neurologist.  R. 15.

The ALJ's decision is further supported by Bowens's own admissions in her application and in response to questioning at her hearing.  During the hearing and in the Adult Function Report submitted to the SSA, Bowens stated that she remained able to perform some household chores.  R. 14, 33.  She conceded that she was able to sit at a computer to work and occasionally able to leave her home to shop.  R. 26, 33.  Moreover, the ALJ personally observed that she was able to attend the hearing unaided.  R. 14, 25-26.

In discounting Bowens's credibility, the ALJ explained his reasoning in detail and provided support for his conclusions by citing to particular facts and admissions in the record. As a result, the ALJ's analysis in this case supports his finding that Bowens's claims were only

14

partially credible and did not support a finding of disability.  Moreover, the ALJ's analysis

outlined above conforms with other decisions affirming ALJ adjudications addressing similar

situations.  See, e.g., Blackwood v. Comm'r of Social Sec., 2008 WL 2704352, at *10 (N.D.N.Y.

July 2, 2008) (finding that ALJ decision that claimant's allegations of the severity of his back

pain was "not entirely credible" was substantially supported by the evidence that claimant

maintained some ability to "do his own laundry, mow[] the lawn, and assist[] his daughters with

snow removal").

In sum, there is substantial evidence in the record to support the ALJ's decision in this

case.  This finding is supported by the medical records, Bowens's own admissions, and the

ALJ's evaluation of Bowens's credibility.

Conclusion

For the foregoing reasons, the motion for judgement on the pleadings (Docket # 9) is

granted.  The Clerk is requested to enter judgment dismissing the complaint.

Dated: November 25, 2009
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

Iesha V. Bowens
45 Rutgers Street
Apt. 8C
New York, NY 10002

Leslie A. Ramirez-Fisher
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York , NY 10007